FILED

2020 Jun-10  AM 09:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **DE'ANDRA BROOKS,** | ) | |
| | ) | **Civil Action No.:** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **TARGET CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now Plaintiff, De'Andra Brooks ("Plaintiff" or "Ms. Brooks"), by and through her undersigned counsel, hereby files this Complaint for relief against the Defendant, Target Corporation ("Defendant" or "Target"), and alleges as follows:

## NATURE OF THE CASE

1.     This is a lawsuit brought by the Plaintiff, De'Andra Brooks, seeking permanent relief from unlawful discriminatory and retaliatory practices committed against her by the Defendant, Target Corporation. The practices committed by the Defendant violate Plaintiff's rights secured by:

a.     The Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*; and

b.      The Americans with Disability Act of 1990 (ADA) as amended in 2008, 42 U.S.C. § 12101 *et seq.;* and

c.      Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq*; and

d.      42 U.S.C. §1981.

## <u>JURISDICTION AND VENUE</u>

2.      This court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331, § 1343(4), § 1367, and 42 U.S.C. § 2000e, *et seq*.

3.      Plaintiff has fulfilled all conditions precedent to the filing of this action under FMLA, ADA, Title VII and Section 1981.

4.      Plaintiff timely filed a charge of discrimination against Defendant Target with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge Number 420-2019-03723.  **(Attached herein as Exhibit A).**

5.      On March 11, 2020 the EEOC issued Plaintiff a Notice of Right to Sue. This right to sue was received by Plaintiff via U.S. Mail on March 13, 2020. **(Attached herein as Exhibit B).**

6.      Plaintiff timely filed this action within ninety (90) days of receipt of the Notice of Right to Sue pursuant to the ADA and Title VII.

7.      Defendant is located and/or doing business within this judicial district and division. This action is brought within the judicial district wherein the unlawful

employment practices were committed, making venue proper under 28 U.S.C. § 1391(b).

## PARTIES

8.     Plaintiff is a black female and a citizen of Jefferson County, Alabama. On April 16, 2018, Plaintiff was hired by Defendant as an Asset Protections Team Leader. Defendant wrongfully terminated Plaintiff's employment on April 14, 2019.

9.     Defendant is a business that operates and manages stores across the country. At all times relevant to this action, Defendant has maintained and operated a store in Birmingham, Alabama, at which Plaintiff was employed.

10.     Defendant is engaged in an industry affecting commerce and has fifty (50) or more employees or employers within the meaning of 29 U.S.C. § 2601 *et. seq*.

## FACTUAL ALLEGATIONS

11.     Plaintiff is a black female.

12.     Plaintiff was hired by Defendant on April 16, 2018 as an Asset Protection Team Leader.

13.     Prior to her employment with Defendant, Plaintiff had over ten (10) years' experience in asset protection/loss prevention.

14.     From the outset of her employment, Plaintiff disclosed her daughter's medical condition to management of the store.  Her daughter was born with a serious

3

health condition that causes her to aspirate when she eats solid foods and drinks liquids.

15.    During her employment with Defendant, Plaintiff was the Team Lead for the only all black Asset Protection Team in the district.

16.    Plaintiff excelled in her position and her team was one of the top asset protection teams in the region.

17.    Around October 2018, David Sears (white) was hired as the Store Manager.

18.    Mr. Sears made racially offensive comments about Plaintiff's all black team being ghetto and urban.

19.    Mr. Sears monitored Plaintiff and her team more closely than other departments.

20.    On several occasions, Mr. Sears reviewed the surveillance cameras located in Plaintiff's office to see whether she and her team were working.

21.    Mr. Sears did not subject white Team Leads to this stringent level of monitoring. The Electronics Department, Apparel Department, Grocery Department, Cashier/Customer Service Department and Domestic Department had white Team Leads and were not monitored as closely as Plaintiff and her team.

22.    In early January 2019, Plaintiff reported Mr. Sears' racially discriminatory conduct to the employee hotline and to Human Resources.

23.     Also, in January 2019, Plaintiff's team needed to hire a permanent Target Protection Specialist ("TPS"). Plaintiff's white supervisor, Andrew Fox, pressured Plaintiff to hire a seasonal TPS as a permanent employee even though the employee had a history of poor attendance.

24.     In an effort to undermine her authority, Mr. Fox hired the seasonal TPS for the permanent position.

25.     On January 21, 2019, only a few weeks after complaining about race discrimination, Mr. Fox met with Plaintiff and expressed concerns about her job performance. Mr. Fox warned Plaintiff that she needed to improve her job performance within thirty (30) days.

26.     During the meeting, Mr. Fox did not clearly identify the purported issues with Plaintiff's performance and did not advise on how to correct the issues.

27.     After the meeting, Plaintiff asked Mr. Fox for clarification, but was not provided any.

28.     On January 30, 2019, Mr. Fox met with Plaintiff and issued her a written counseling claiming that her performance was unacceptable. Plaintiff again asked specifically what she needed to do to improve her performance and Mr. Fox responded that she needed to discipline her team members for attendance issues.

29.     At that time Plaintiff's only team member was the TPS that Mr. Fox promoted over her objection.

30.     During the January 30, 2019 meeting, Mr. Fox also criticized Plaintiff for supposedly failing to complete Safety Assignments in a timely manner. However, the completion of Safety Assignments was the responsibility of the other managers in the store, not Plaintiff.

31.     Following the January 30, 2019 meeting, Plaintiff sent Mr. Fox an email wherein she reported that the counseling was issued to her in retaliation for reporting race discrimination

32.     After the written counseling, Mr. Fox began meeting with Plaintiff to discuss her job performance on a weekly basis. During these meetings Mr. Fox gave Plaintiff conflicting instructions on how to improve her job performance.

33.     During the job performance meetings, Mr. Fox's behavior towards Plaintiff was aggressive and made Plaintiff very uncomfortable.

34.     Due to Mr. Fox's hostile behavior, Plaintiff asked that another female employee be present during Mr. Fox's weekly meetings.

35.     In response to Plaintiff's request for another female employee presence, Mr. Fox invited Mr. Sears (white male) to attend the weekly meetings. Mr. Fox and Mr. Sears displayed aggressive and intimidating behavior towards Plaintiff, which made her very uncomfortable.

36.     Plaintiff reported Mr. Fox and Mr. Sears' behavior to the employee hotline several times in February 2019.

6

37.     Also, in February 2019, Plaintiff reached out to Mr. Sears concerning Mr. Fox's allegations about her job performance. Instead of assisting Plaintiff, Mr. Sears told her that she had threatened him by calling the employee hotline.

38.     After speaking with Mr. Sears, Plaintiff submitted a written complaint about Mr. Fox and Mr. Sears to the employee hotline and reported that she was being targeted for termination.

39.     In February 2019, Defendant set up a commemorative display in the store referencing Black History Month. The products placed on the display promoted black stereotypes and was highly offensive to Plaintiff and the other black employees.

40.     Plaintiff reported that the display was racially offensive to Mr. Sears and Mr. Fox, but this complaint was ignored.

41.     Plaintiff then reported the offensive display to the employee hotline; however, the hotline operator did not follow up with her concerning her complaint.

42.     Around February 2019, Plaintiff's daughter had several doctor's appointments related to her serious medical condition. Plaintiff tried to schedule her daughter's appointments on her days off, however, many of the appointments were with specialists who have limited scheduling options.

43.    Each time Plaintiff was absent for her daughter's medical treatment, Plaintiff used a vacation day. Mr. Fox and Mr. Sears criticized Plaintiff for using vacation days for her daughter's medical treatment.

44.    Mr. Fox made the comment that he was aware of her daughter's condition, "but he had a business to run."

45.    On February 6, 2019, Plaintiff contacted Mr. Fox and Human Resources and requested information about FMLA leave.  Plaintiff explained that she needed protected medical leave for her daughter's medical appointments.

46.    The Human Resources Representative admitted that she was unfamiliar with the requirements for FMLA leave, so she instructed Plaintiff to contact the employee hotline concerning her FMLA request.

47.    After contacting the hotline, Plaintiff was informed she would be eligible for FMLA leave on the one-year anniversary of her employment on April 16, 2019.

48.    On March 13, 2019, Mr. Fox issued Plaintiff a final warning for purportedly failing to meet expectations from the January 30, 2019 written counseling and for her poor attendance. At this time, Plaintiff had not exceeded her allotted vacations days and had implemented all of the areas of improvement noted on the January 30, 2019 written counseling.

49.    On April 12, 2019, Plaintiff contacted the employee hotline and requested an application for FMLA leave. She also notified Mr. Fox about her FMLA leave request.

50.    On April 14, 2019, just two (2) days after she requested information about FMLA leave and two (2) days prior to being eligible for leave, Defendant terminated Plaintiff's employment.

51.    Plaintiff was not scheduled to work on April 15, 2019 and April 16, 2019, thus Plaintiff was terminated on her last scheduled day prior to being eligible for protected FMLA leave.

## COUNT ONE - FMLA INTERFERENCE

52.    This is a claim against Defendant to redress the unlawful employment practice of protected leave interference protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

53.    There existed an employer-employee relationship between the Plaintiff and Defendant.

54.    Plaintiff's daughter has a serious health condition. Plaintiff requested leave for her daughter's medical treatments which would have been protected leave under the FMLA.

55.    On February 6, 2019, Plaintiff contacted Mr. Fox and Human Resources and requested information about FMLA leave. Plaintiff explained that she needed protected medical leave for her daughter's medical appointments.

56.    The Human Resources Representative admitted that she was unfamiliar with the requirements for FMLA leave, so she instructed Plaintiff to contact the employee hotline concerning her FMLA request.

57.    After contacting the hotline, Plaintiff was informed she would be eligible for FMLA leave on the one-year anniversary of her employment on April 16, 2019.

58.    On April 12, 2019, Plaintiff contacted the employee hotline and requested an application for FMLA leave. She also notified Mr. Fox about her FMLA leave request.

59.    On April 14, 2019, just two (2) days after she requested information about FMLA leave and two (2) days prior to being eligible for leave, Defendant terminated Plaintiff's employment.

60.    Defendant terminated Plaintiff's employment to prevent her from becoming eligible for protected leave and/or leave that was protected, in violation of her rights protected by FMLA.

61.     As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff has suffered loss of pay and benefits, financial loss, and economic loss.

62.     Plaintiff seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT TWO- FMLA RETALIATION

63.     This is a claim against Defendant to redress the unlawful employment practice of retaliation protected by the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et. seq.*

64.     There existed an employer-employee relationship between the Plaintiff and Defendant.

65.     Plaintiff's daughter has a serious health condition. Plaintiff requested leave for her daughter's medical treatments which would have been protected leave under the FMLA.

66.     On February 6, 2019, Plaintiff contacted Mr. Fox and Human Resources and requested information about FMLA leave. Plaintiff explained that she needed protected medical leave for her daughter's medical appointments.

67.    The Human Resources Representative admitted that she was unfamiliar with the requirements for FMLA leave, so she instructed Plaintiff to contact the employee hotline concerning her FMLA request.

68.    After contacting the hotline, Plaintiff was informed she would be eligible for FMLA leave on the one-year anniversary of her employment on April 16, 2019.

69.    On April 12, 2019, Plaintiff contacted the employee hotline and requested an application for FMLA leave. She also notified Mr. Fox about her FMLA leave request.

70.    On April 14, 2019, just two (2) days after she requested information about FMLA leave and two (2) days prior to being eligible for leave, Defendant terminated Plaintiff's employment.

71.    Defendant terminated Plaintiff's employment, because of her request to take protected leave and/or leave that was protected.

72.    Defendant's termination of Plaintiff was unlawful retaliation of Plaintiff in violation of the FMLA.

73.    As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff has suffered loss of pay and benefits, financial loss, and economic loss.

74.     Plaintiff seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT THREE - ASSOCIATED DISABILITY DISCRIMINATION

75.     This is a claim against Defendant to redress the unlawful employment practice of disability discrimination protected by the Americans with Disability Act of 1990 (ADA), 42 U.S.C. § 12101 *et seq.*

76.     This is a claim against Defendant for associated disability discrimination.

77.     Plaintiff was qualified for her position with the Defendant.

78.     Plaintiff's daughter was born with a serious health condition that causes her to aspirate when she eats solid foods and drinks liquids.

79.     From the outset of her employment, Plaintiff disclosed her daughter's serious medical condition to management at the store.

80.     Plaintiff's daughter's serious medical condition substantially limits one or more of her major life activities.

81.     Around February 2019, Plaintiff's daughter had several doctor's appointments related to her serious medical condition. Plaintiff tried to schedule her daughters' appointments on her days off, however, many of the appointments were with specialists who have limited scheduling options.

82.     Each time Plaintiff was absent for her daughter's medical treatment, Plaintiff used a vacation day. Mr. Fox and Mr. Sears criticized Plaintiff for using vacation days for her daughter's medical treatment.

83.     In being critical of Plaintiff for taking time off from work to attend to her daughter's medical treatment, Mr. Fox made the comment that he was aware of her daughter's condition, "but he had a business to run."

84.     Plaintiff's co-workers were not similarly criticized with respect to how they utilized their vacation days.

85.     On April 14, 2019, Defendant terminated Plaintiff's employment.

86.     As a proximate result of Defendant's unlawful and intentional discrimination, Plaintiff suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

87.     Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT FOUR— TITLE VII RACE DISCRIMINATION

88.     This is a claim against Defendant to redress the unlawful employment practice of racial discrimination protected by Title VII of the Civil Rights Act of 1964, as amended ("Title VII").

89.     This is a claim against Defendant for the intentional and illegal discrimination of Plaintiff, because of her race (black).

90.     Plaintiff is black and a member of a protected minority class.

91.     Prior to her employment with Defendant, Plaintiff had over ten (10) years' experience in asset protection/loss prevention.

92.     During her employment with Defendant, Plaintiff was the Team Lead for the only all black Asset Protection Team in the district.

93.     Plaintiff excelled in her position and her team was one of the top asset protection teams in the region.

94.     Around October 2018, David Sears (white) was hired as the Store Manager.

95.     Mr. Sears made racially offensive comments about Plaintiff's all black team being ghetto and urban.

96.     Mr. Sears monitored Plaintiff and her team more closely than other departments with white Team Leads.  On several occasions, Mr. Sears reviewed the surveillance cameras located in Plaintiff's office to see whether she and her team were working.

97.     Mr. Sears did not subject white Team Leads to this stringent level of monitoring.  The   Electronics   Department,   Apparel   Department,   Grocery

Department, Cashier/Customer Service Department and Domestic Department had white Team Leads and were not monitored as closely as Plaintiff.

98.   Plaintiff's management undermined her authority including placing employees on her team, over her objection, who had a history of poor attendance and performance.

99.   In early January 2019, Plaintiff reported Mr. Sears' racially discriminatory conduct to the employee hotline and to Human Resources.

100.   Plaintiff was disciplined, treated less favorably and subjected to different working conditions than similarly situated Caucasian employees.

101.   As a proximate result of Defendant's unlawful and intentional discrimination, Plaintiff suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

102.   Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT FIVE — SECTION 1981 RACE DISCRIMINATION

103.   This is a claim against Defendant to redress the unlawful employment practice of racial discrimination protected by 42 U.S.C. §1981.

104. This is a claim against Defendant for the intentional and illegal discrimination of Plaintiff, because of her race (black).

105. Plaintiff is black and a member of a protected minority class.

106. Prior to her employment with Defendant, Plaintiff had over ten (10) years' experience in asset protection/loss prevention.

107. During her employment with Defendant, Plaintiff was the Team Lead for the only all black Asset Protection Team in the district.

108. Plaintiff excelled in her position and her team was one of the top asset protection teams in the region.

109. Around October 2018, David Sears (white) was hired as the Store Manager.

110. Mr. Sears made racially offensive comments about Plaintiff's all black team being ghetto and urban.

111. Mr. Sears monitored Plaintiff and her team more closely than other departments. On several occasions, Mr. Sears reviewed the surveillance cameras located in Plaintiff's office to see whether she and her team were working.

112. Mr. Sears did not subject white Team Leads to this stringent level of monitoring. The Electronics Department, Apparel Department, Grocery Department, Cashier/Customer Service Department and Domestic Department had white Team Leads and were not monitored as closely as Plaintiff and her team.

113.   Plaintiff's management undermined her authority including placing employees on her team, over her objection, who had a history of poor attendance and performance.

114.   In early January 2019, Plaintiff reported Mr. Sears' racially discriminatory conduct to the employee hotline and to Human Resources.

115.   Plaintiff was disciplined, treated less favorably and subjected to different working conditions than similarly situated Caucasian employees.

116.   As a proximate result of Defendant's unlawful and intentional discrimination, Plaintiff suffered loss of pay and benefits, financial loss, economic loss, shame, humiliation and emotional distress.

117.   Plaintiff seeks declaratory and injunctive relief, an award of compensatory and punitive damages for mental anguish, reinstatement, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT SIX — TITLE VII RETALIATION

118.   There existed an employer-employee relationship between the Plaintiff and Defendant.

119.   Plaintiff exercised her statutory rights under the Title VII by opposing race discrimination and notifying Defendant about her unequal treatment.

120. Around October 2018, David Sears (white) was hired as the Store Manager. Mr. Sears made racially offensive comments about Plaintiff's all black team being ghetto and urban.

121. Mr. Sears monitored Plaintiff and her team more closely than other departments.

122. Mr. Sears did not subject white Team Leads to this stringent level of monitoring. The Electronics Department, Apparel Department, Grocery Department, Cashier/Customer Service Department and Domestic Department had white Team Leads and were not monitored as closely as Plaintiff and her team.

123. In early January 2019, Plaintiff reported Mr. Sears' racially discriminatory conduct to the employee hotline and to Human Resources.

124. Shortly after reporting race discrimination, Mr. Fox met with Plaintiff and expressed illegitimate concerns about her job performance. Mr. Fox warned Plaintiff that she needed to improve her job performance within thirty (30) days.

125. During the meeting, Mr. Fox did not clearly identify the issues with Plaintiff's performance and did not advise on how to correct the supposed issues.

126. After the meeting, Plaintiff asked Mr. Fox for clarification, but was not provided any.

127. On January 30, 2019, Mr. Fox met with Plaintiff and issued her a retaliatory written counseling claiming that her performance was unacceptable.

128.   Following the January 30, 2019 meeting, Plaintiff sent Mr. Fox an email wherein she reported that the counseling was issued to her in retaliation for reporting race discrimination

129.   After the written counseling, Mr. Fox began meeting with Plaintiff to discuss her job performance on a weekly basis. During these meetings Mr. Fox gave Plaintiff conflicting instructions on how to improve her job performance.

130.   During the job performance meetings, Mr. Fox's behavior towards Plaintiff was aggressive and made Plaintiff very uncomfortable.

131.   Due to Mr. Fox's hostile and retaliatory behavior, Plaintiff asked that another female employee be present during Mr. Fox's weekly meetings.

132.   In response to Plaintiff's request for another female employee presence, Mr. Fox invited Mr. Sears (white male) to attend the weekly meetings. Mr. Fox and Mr. Sears displayed aggressive and intimidating behavior towards Plaintiff, which made her very uncomfortable.

133.   Plaintiff reported Mr. Fox and Mr. Sears' retaliatory behavior to the employee hotline several times in February 2019.

134.   Also, in February 2019, Plaintiff reached out to Mr. Sears concerning Mr. Fox's allegations about her job performance. Instead of assisting Plaintiff, Mr. Sears told her that she had threatened him by calling the employee hotline.

135.   After speaking with Mr. Sears, Plaintiff submitted a written complaint about Mr. Fox and Mr. Sears to the employee hotline and reported that she was being targeted for termination.

136.   In February 2019 Defendant set up a commemorative display in the store referencing Black History Month. The products placed on the display promoted black stereotypes and was highly offensive to Plaintiff and the other black employees.

137.   Plaintiff reported that the display was racially offensive to Mr. Sears and Mr. Fox, but her complaint was ignored.

138.   Plaintiff then reported the offensive display to the employee hotline; however, the hotline operator did not follow up with her concerning her complaint.

139.   On March 13, 2019, Mr. Fox issued Plaintiff a retaliatory final warning for purportedly failing to meet expectations from the January 30, 2019 written counseling and for her poor attendance. At this time, Plaintiff had not exceeded her allotted vacations days and had implemented all of the areas of improvement noted on the January 30, 2019 written counseling.

140.   On April 14, 2019, Plaintiff was terminated.

141.   As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff has suffered loss of pay and benefits, financial loss, and economic loss.

21

142.    Plaintiff seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## COUNT SEVEN — SECTION 1981 RETALIATION

143.    There existed an employer-employee relationship between the Plaintiff and Defendant.

144.    Plaintiff exercised her statutory rights under 42 U.S.C. §1981 by opposing race discrimination and notifying Defendant about her unequal treatment.

145. Around October 2018, David Sears (white) was hired as the Store Manager. Mr. Sears made racially offensive comments about Plaintiff's all black team being ghetto and urban.

146.    Mr. Sears monitored Plaintiff and her team more closely than other departments.

147.    Mr. Sears did not subject white Team Leads to this stringent level of monitoring. The Electronics Department, Apparel Department, Grocery Department, Cashier/Customer Service Department and Domestic Department had white Team Leads and were not monitored as closely as Plaintiff and her team.

148.    In early January 2019, Plaintiff reported Mr. Sears' racially discriminatory conduct to the employee hotline and to Human Resources.

149.   Shortly after reporting race discrimination, Mr. Fox met with Plaintiff and expressed illegitimate concerns about her job performance.  Mr. Fox warned Plaintiff that she needed to improve her job performance within thirty (30) days.

150.   During the meeting, Mr. Fox did not clearly identify the issues with Plaintiff's performance and did not advise on how to correct the supposed issues.

151.   After the meeting, Plaintiff asked Mr. Fox for clarification, but was not provided any.

152.   On January 30, 2019, Mr. Fox met with Plaintiff and issued her a retaliatory written counseling claiming that her performance was unacceptable.

153.   Following the January 30, 2019 meeting, Plaintiff sent Mr. Fox an email wherein she reported that the counseling was issued to her in retaliation for reporting race discrimination

154.   After the written counseling, Mr. Fox began meeting with Plaintiff to discuss her job performance on a weekly basis. During these meetings Mr. Fox gave Plaintiff conflicting instructions on how to improve her job performance.

155.   During the job performance meetings, Mr. Fox's behavior towards Plaintiff was aggressive and made Plaintiff very uncomfortable.

156.   Due to Mr. Fox's hostile and retaliatory behavior, Plaintiff asked that another female employee be present during Mr. Fox's weekly meetings.

157.   In response to Plaintiff's request for another female employee presence, Mr. Fox invited Mr. Sears (white male) to attend the weekly meetings. Mr. Fox and Mr. Sears displayed aggressive and intimidating behavior towards Plaintiff, which made her very uncomfortable.

158.   Plaintiff reported Mr. Fox and Mr. Sears' retaliatory behavior to the employee hotline several times in February 2019.

159.   Also, in February 2019, Plaintiff reached out to Mr. Sears concerning Mr. Fox's allegations about her job performance. Instead of assisting Plaintiff, Mr. Sears told her that she had threatened him by calling the employee hotline.

160.   After speaking with Mr. Sears, Plaintiff submitted a written complaint about Mr. Fox and Mr. Sears to the employee hotline and reported that she was being targeted for termination.

161.   In February 2019 Defendant set up a commemorative display in the store referencing Black History Month. The products placed on the display promoted black stereotypes and was highly offensive to Plaintiff and the other black employees.

162.   Plaintiff reported that the display was racially offensive to Mr. Sears and Mr. Fox, but her complaint was ignored.

163.   Plaintiff then reported the offensive display to the employee hotline; however, the hotline operator did not follow up with her concerning her complaint.

164.   On March 13, 2019, Mr. Fox issued Plaintiff a retaliatory final warning for purportedly failing to meet expectations from the January 30, 2019 written counseling and for her poor attendance. At this time, Plaintiff had not exceeded her allotted vacations days and had implemented all of the areas of improvement noted on the January 30, 2019 written counseling.

165.   On April 14, 2019, Plaintiff was terminated.

166.   As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff has suffered loss of pay and benefits, financial loss, and economic loss.

167.   Plaintiff seeks declaratory relief, award of liquidated damages, back pay, front pay, costs, attorneys' fees, and any and all such further relief as the trier of fact may assess.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by struck jury of all issues in this Complaint.

Respectfully Submitted,

*/s/ William B. Beckum*
William B. Beckum (ASB-4222-I70B)

*/s/ Brooke R. Davis*
Brooke R. Davis (ASB-6984-L36N)
*Attorneys for Plaintiff*

**OF COUNSEL:**

**BECKUM LAW LLC**
3184 Cahaba Heights Rd.
Birmingham, Alabama 35243
Tel: (205) 588-0699

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**

Target Corporation
By Serving its Registered Agent:
CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104